## HAWKINS v. UNITED STATES.

(Circuit Court of Appeals. Seventh Circuit.
March 11, 1926. Rehearing Denied
September 18, 1926.)

No. 3622.

**1. Indictment and information ⊝121(3).**

Denial of bill of particulars of letters charged to have been mailed, made on day set for trial, when defendant failed to appear and his bond was forfeited, *held* no abuse of discretion.

**2. Criminal law ⊝1173(1).**

Charge having fairly incorporated request as to intent, and evidence of guilt being clear and convincing, failure more fully to state in charge substance of request *held* harmless.

**3. Criminal law ⊝984—There being counts enough sustained by evidence to support penalty imposed by judgment for aggregate of offenses, it is immaterial that other counts are not so sustained.**

So long as there are counts enough sustained by evidence to support penalty imposed by the judgment for the aggregate of offenses, it is immaterial that other counts are not so sustained; it being unnecessary to allocate such penalty to particular counts.

**4. Criminal law ⊝1216(3).**

Judgment after first imposing penalty of 5 years' imprisonment and $1,000 on each of fifteen counts *held*, by further provisions for cumulation to certain extent, to fix as the penalty for aggregate of offenses 15 years' imprisonment and $10,000 fine.

**5. Criminal law ⊝1208(5).**

Court cannot by judgment deprive defendant of the statutory incidents of penal service, allowance for good time and eligibility to parole; and any attempt is inoperative.

In Error to the District Court of the United States for the District of Indiana.

Morton S. Hawkins was convicted of violations of Criminal Code, §§ 37 and 215 (Comp. St. §§ 10201, 10385), and brings error. Affirmed.

Jacob F. Denney, of Portland, Ind., for plaintiff in error.

Homer Elliott, of Indianapolis, Ind., for the United States.

Before ALSCHULER, EVANS, and PAGE, Circuit Judges.

ALSCHULER, Circuit Judge. Plaintiff in error was convicted on the sixteen counts of the same indictment whereon twelve of his codefendants named therein were a short time before convicted, and writs of error prosecuted, opinion whereon is filed contemporaneously herewith. Scheib et al. v. United States, Nos. 3578 to 3589, inclusive, 14 F.(2d) 75.

[1] As might be expected, the record here is not substantially different from that in the other cases. There was made the same attack upon the indictment, and what we there said on that proposition is likewise here applicable. In this connection we will consider the complaint as to denial of Hawkins' motion for bill of particulars of the letters charged to have been mailed. From what is stated in Durland v. United States, 161 U. S. 306, 16 S. Ct. 508, 40 L. Ed. 709, referred to in our opinion in Scheib et al., it is fair to presume that, had seasonable application been made therefor, it would have been granted. In March, 1924, Hawkins pleaded not guilty to the indictment, after his demurrer thereto had been overruled. His case was set for trial October 1, 1924. He was not then present, and his bond was forfeited. On same date his attorneys presented motion on his behalf for the bill of particulars of the indictment letters, asking therein for reasonable time after their production to prepare defense thereto. The motion was denied. The court doubtless concluded, and properly so, that the application thus presented by Hawkins' attorney was merely for delay. Some months afterward Hawkins was apprehended, and the case was set, and proceeded to trial without renewal of motion. Denial of the motion under the indicated circumstances was surely no abuse of the court's discretion.

While no contention is here made that the judgment finds no support in the record, and no such question was saved, we quote briefly from the bill of exceptions to indicate more clearly the nature of the case:

"There was evidence to prove that * * * Hawkins was president of the Hawkins Mortgage Company; * * * that the defendants Anthony A. Scheib, Carl B. Anderson, Frank B. Jaqua, John T. Sutton, J. W. McCallum, Leo P. Harrington, and A. R. Sax were either officers or employés of the Hawkins Mortgage Company or of its subsidiaries, the Welfare Loan Societies, or of both, and that they all operated in and from the office of the Hawkins Mortgage Company, at Portland, Ind.; * * * that the Hawkins Mortgage Company operated at a loss from 1918 to the end of 1923, and that its common stock, which was sold for various prices ranging up to $65 per share, had no actual value at any time; * * * that the financial statements published and circulated by the Hawkins Mortgage Company were incorrect, in that they showed undivided profits and surplus when, in fact, they should have showed a loss; * * * that dividends were paid out of capital and out of money borrowed, but that there were no earnings out of which to pay dividends on Hawkins Mortgage Company preferred stock

or on the stock of many of the Welfare Loan Societies; that dividends were paid on Welfare Loan Society stock in some instances where the Welfare had not opened for business; and that letters, booklets, and circulars were sent out to the public in which it was stated that the allied companies were prosperous, when in fact they were and had been losing money; * * * that the defendant Morton S. Hawkins was the directing head of the Hawkins Mortgage Company from the time of its organization until it suspended business, except for brief intervals when he was absent from home, and that, when absent in Europe, he was in communication with the office by letter and by cable; that he was advised from time to time of the fact that the Hawkins Mortgage Company was losing money, and that he signed income tax returns showing that fact; that he at times made changes in the financial statements prepared by the auditor of the company so as to present a more favorable appearance."

A number of objections were made and exceptions saved to rulings on admission and rejection of evidence, and assignments of error as to some of these are discussed in brief for plaintiff in error. We have examined them and find they are all of the "pinhook" variety, which could not substantially have affected the merits or outcome of the case whatever the ruling thereon might have been.

[2] The court's charge to the jury was lengthy and concededly fair. No exception was preserved. Before the court charged the jury, counsel for Hawkins submitted the following request for instruction, which the record states, the court refused.

"Before you can convict this defendant, you must find and believe from the evidence that such defendant either made the representations, or some of them, mentioned in the evidence, or that he agreed with others of the defendants that such representations or some of them, should be made to the public; you must further find and believe from the evidence that the representations which you find to have been made were false and fraudulent, and were made with the specific intent, purpose and design to deceive and defraud the persons to whom they were made, and, although you may believe that the plan of business operations of the companies in question was unsound or even visionary and incapable of success, or that their failures resulted from gross mismanagement, waste, extravagance, or want of business foresight, yet, if you believe that this defendant making any of the representations shown in the evidence actually and in good faith believed the truth of any representations made by him or by others

with his concurrence, then you cannot find such defendant guilty under any of the counts of the indictment and the fact that the falsity of any particular representations might have been discovered by reasonable diligence would not render him guilty so long as he did not actually know the same was false."

After charging the jury, no objection was made that the substance of this request was not incorporated, and, if the judge had inadvertently failed sufficiently to incorporate its substance, no opportunity was given him to supply the omission. While it might have been better had the substance of the request been more fully incorporated than it was, yet nothing in the charge conflicted with its general purport, and indeed from a broad reading of the charge it may well be considered fairly to have incorporated it. The record evidence of guilt was so clear and convincing that we cannot see how possible harm accrued to Hawkins through failure more fully to state in the charge the substance of the request.

Questions quite novel are raised upon the judgment itself, which specifies that for the offenses charged in each of the first fifteen counts the defendant be imprisoned for 5 years, and for that in the sixteenth count for 2 years, and that upon each of the sixteen counts he pay a fine of $1,000, and then follow these provisions:

"It is further considered and adjudged by the court that the said several terms of imprisonment shall be cumulative until the said defendant Morton S. Hawkins shall have served and been imprisoned by virtue of the said sentence and judgment for *the full* period of 15 years, and *at the expiration of such 15 years, and not before,* the remainder of said judgment and sentence of imprisonment shall be deemed to have run concurrently.

"It is further considered and adjudged that the said several fines shall be cumulative until the same amount to $10,000, and shall be concurrent for the remainder thereof, and that the United States recover of the defendant Morton S. Hawkins the said sum of $10,000, and that he stand committed until said fine shall be paid or discharged."

It is contended for plaintiff in error that there was no proof of mailing as to three of the counts, and that judgment should not have been given upon them. As to one (fifteenth), the government concedes there is no proof of mailing, and, but for the first above quoted paragraph of the judgment, the situation could be met by reversal and remandment as to that count and such others as might be found subject to same objection.

[3] But it is further contended that, in view

of the paragraphs fixing the total penalty at 15 years' imprisonment and $10,000 fine, it cannot be known as to which of the counts the penalty applies, or whether its application is to the counts which it is claimed are without evidence to support them. We do not think the contention is important from a practical point of view, in that it is not necessary to allocate the reduced total of penalty to particular counts, so long as there are counts enough sustained by the evidence to support the penalty thus fixed.

It was further urged that the paragraph, if considered as imposing a 15-year term of imprisonment, would improperly deprive plaintiff in error of the statutory benefit of time earned for good behavior, and right to parole. It is held that each unlawful mailing, although all in execution of the same fraudulent scheme, is a separate offense under the statute, separately punishable under the several counts of the indictment, even though the aggregate penalty exceeds the statutory maximum for a single mailing. In Re Henry, 123 U. S. 372, 8 S. Ct. 142, 31 L. Ed. 174, In re De Bara, 179 U. S. 316, 21 S. Ct. 110, 45 L. Ed. 207, Badders v. United States, 240 U. S. 391, 36 S. Ct. 367, 60 L. Ed. 706, and in United States v. Daugherty (Jan. 4, 1926) 269 U. S. 360, 46 S. Ct. 156, 70 L. Ed. 309, it is held that judgment for a cumulative sentence on several counts, in excess of the statutory maximum for a single offense, is a judgment of imprisonment for the aggregate period.

[4] The aggregate of the sentences on the counts here is 77 years. The intent to impose so fantastic a sentence on any one for such an offense or aggregations of offenses under same indictment should not be attributed to any court unless from the record such conclusion is inescapable. While the court here went through the formality of preliminarily imposing this aggregate of years sentence, it is manifest there was no intent that this should be the penalty, and, if the true intent can be gathered from the record, we must seek it out and construe the judgment accordingly.

In passing sentence, whether on one count or many, the end to be attained, as nearly as may be, is fairly to proportion the penalty to the offense, "to make the punishment fit the crime," as "the Mikado" so well said. There is no judicial function which makes larger drafts upon the fairness, common sense, sanity, and good judgment of the judge than that of fixing penalties for criminal offenses, nor one which more vitally affects the stability of free institutions. Excessive penalties are ty-

ranical in the court, and abhorrent to the public; on the other hand, penalties unduly mild seriously embarrass law enforcement and encourage infractions of the criminal laws. Of course the District Judge was fully alive to these principles, and evidently sought conscientiously a penalty which in his judgment would be fairly proportionate to the offense. We gather from the record that he determined that 15 years' imprisonment and $10,000 fine would accomplish this result, and that he fixed this as the penalty for the aggregate of all these offenses. Whether this could have been done without first imposing the several penalties is a question not before us.

[5] But having so concluded, may the court by way of its judgment affect in any manner the statutory incidents of penal service, such as allowance for good time and eligibility to parole, and do the italicized words of the first paragraph above quoted from the judgment deprive Hawkins of these rights or privileges? We think not. The term of imprisonment fixed by the court should have no relation whatever to the statutory incident of penal service which attach after the judgment becomes operative. If a court, fearing that one who is given a term of imprisonment may apply for and obtain release on parole after service of one-third the time, should enlarge the term threefold so as to insure service of the term which it regards as fairly proportioned to the offense, it would plainly exceed its duty and function. Likewise as to statutory good time provisions. In fixing judgment it has no right to take into consideration these elements, and could not justify so doing any more than it could a stipulation in the judgment that no pardon or commutation shall ever be granted. These are matters for the legislative or executive department, and should have no place or influence in fixing sentence and judgment.

Nor are we certain that from the judgment it was the intent of the court by the form of its judgment to so affect these statutory incidents of the penal service. But, in so far as the italicized words might be so construed, we hold them to be inoperative and of no effect.

None of the other assignments of error being sustained, and construing, as we do, this sentence and judgment to be for 15 years' imprisonment and $10,000 fine, and in no manner affecting any right of parole, allowance for good time or other lawful incidents of penal service whereof plaintiff in error may undertake to claim the benefit, the judgment is affirmed.